TODD D. CARPENTER (SBN 234464)
tcarpenter@carlsonlynch.com
**CARLSON LYNCH LLP**
1350 Columbia St., Ste. 603
San Diego, California 92101
Telephone:     (619) 762-1900
Facsimile:     (619) 756-6991

EDWIN J. KILPELA (*Pro Hac Vice* Forthcoming)
ekilpela@carlsonlynch.com
JAMES P. MCGRAW (*Pro Hac Vice* Forthcoming)
jmcgraw@carlsonlynch.com
**CARLSON LYNCH LLP**
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone     412-322-9243
Facsimile     412-231-0246

STEPHEN B. MURRAY (*Pro Hac Vice* Forthcoming)
smurray@murray-lawfirm.com
STEPHEN B. MURRAY, JR. (*Pro Hac Vice* Forthcoming)
smurrayjr@murray-lawfirm.com
CAROLINE T. WHITE (*Pro Hac Vice* Forthcoming)
cthomas@murray-lawfirm.com
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone     (504) 525-8100
Facsimile:     (504) 584-5249

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY N. KAY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>COPPER CANE, LLC d/b/a COPPER CANE WINES & PROVISIONS, a California corporation,<br><br>        Defendant. | Case No.:<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Barry N. Kay ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Copper Cane, LLC d/b/a Copper Cane Wines & Provisions ("Defendant"), and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## INTRODUCTION

1.    Defendant distributes wines under various brand names, including pinot noir varieties labeled as "Elouan" ("Elouan" or the "Product").

2.    The labels on the Product indicates that this wine originates from and is produced in various wine growing American Viticultural Areas[1] ("AVAs") within the State of Oregon, as well as indicating in a more general way that the wine is produced within the wine growing regions of the State of Oregon (the "Oregon Appellation[2]").

3.    Specifically, Elouan wine bottles have a label referencing the Oregon Appellation, and the boxes in which Elouan bottles are shipped mention the Willamette, Umpqua, and Rogue valleys, all of which are AVAs within the State of Oregon.

4.    However, contrary to the representations made on the labels, boxes, and marketing materials for Elouan, the wine is not actually made in the state of Oregon, much less in the specific AVAs listed on the Product's packaging.  Instead, the wine is vinified[3] and bottled at Defendant's facilities in the Napa Valley in the State of California.

5.    Rules promulgated by the Oregon Winegrowers Association ("OWA") require that for a wine to be labeled with one of the Oregon AVAs, at least 95 percent of the grapes used in making that wine must come from that specific AVA, and the wine must be fully finished within the state.

6.    In this way, wines from specific Oregon AVAs are similar to Kobe beef, which can only be produced according to specifications within a certain region (Kobe) in Japan, or champagne, which can only be produced in a specific region of France and by using certain techniques.

[1] An "AVA" is a designated wine grape-growing region in the United States, providing an official appellation for the mutual benefit of wineries and consumers.

[2] An "appellation" is a legally defined and protected geographical indication used to identify where the grapes for a wine were grown.

[3] "Vinification" is the process through which grapes are turned into wine via fermentation.

7.    Reasonable consumers purchase wines from the Oregon AVAs believing they possess the attributes of authentic wines from those specific regions.

8.    Because the wines are sold in sealed bottles made of heavily tinted glass (as is customary with wine) and cannot be seen, smelled, or touched prior to purchase, consumers must rely on the truthfulness of the labels.

9.    There is large consumer demand for wines from the Oregon AVAs, and consumers are willing to pay premium prices for these wines, or purchase them instead of other wines, because, rightly or wrongly, consumers believe that wines from the Oregon AVAs have superior flavors and other characteristics to wines produced in different regions, elsewhere within and outside of Oregon.

10.    To the detriment of consumers, the Product is not authentic wine from the Oregon AVAs.

11.    Defendant seeks to take advantage of the premium placed on wines from the Oregon AVAs by specifically labeling, packaging, and marketing its Product as if it was produced in the Oregon AVAs.

12.    Reasonable consumers could have been, and in fact were, misled by the references to the Oregon AVAs on the Product's labels, packaging, and marketing materials.

13.    As a result of Defendant's false and deceptive labeling, Plaintiff and the members of the proposed Classes (defined below) have purchased products they otherwise would not have purchased and have paid more for products than they otherwise would have paid.

14.    Plaintiff brings this action on behalf of himself and all others similarly situated to halt the dissemination of Defendant's false, misleading and deceptive advertising, correct the inaccurate perception it has created in the minds of consumers, and obtain redress for those who have purchased Defendant's Product.

## JURISDICTION AND VENUE

15.    The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 Class members, and some of the members of the Classes are citizens of states different from Defendant.

16.     This Court has personal jurisdiction over Defendant because Defendant conducts business in this District. Defendant has marketed, promoted, distributed, and sold the Products in California, rendering exercise of jurisdiction by this Court permissible.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

18.     Pursuant to Local Civil Rule 3-2(e), this action shall be assigned to the San Francisco or the Oakland Division.

## PARTIES

19.     Plaintiff Barry N. Kay is a citizen of the State of California, and, at all times relevant to this action, resided in Los Angeles County.

20.     Defendant Copper Cane, LLC, is a California corporation, and it is headquartered in St. Helena, Napa County, California.

## FACTUAL ALLEGATIONS

**I.     Wines from specific Oregon AVAs are subject to objective criteria concerning the location of growing, harvesting, vinifying, and finishing the wines**

21.     Wines, especially pinot noir varieties, produced in the Oregon AVAs are believed by many wine consumers to possess superior flavors and other characteristics not possessed by those wines produced in other regions.

22.     The terms "Willamette Valley," "Umpqua Valley," and "Rogue Valley" refer to wine growing AVAs located in and unique to the State of Oregon.

23.     Though grapes grown in one or more of the Oregon AVAs may be used in wines made in a multitude of locations, a winemaker may not use the name of an Oregon AVA unless at least 95% of the grapes used in making the particular wine were grown in the AVAs identified on the wine's labeling, packaging, or marketing materials and the wine was fully vinified and finished within the State of Oregon.

24.     These objective criteria have been developed by the OWA, an organization charged with protecting the investments of its members – Oregon wine growers – through legislative and regulatory

advocacy, legal compliance, and standardization. By extension, these activities protect the valuable branding of Oregon wines.

25.    The standards set by the OWA provide enhanced protection for the branding of wines with Oregon AVAs than what is provided by the Federal rules, which require that 85% of the grapes used in making a wine to be from a specific AVA in order for that AVA to be listed on the wine's labels and packaging. Thus, consumers who seek out wines from Oregon AVAs know that more stringent standards have been met in order for the Oregon AVAs to be listed on a wine's labeling, packaging, or marketing materials.

26.    Defendant's Product, though marked with the names of one or more of the Oregon AVAs, does not meet these standards.

27.    Oregon pinot noir varieties are considered to have different characteristics of flavor, body, nose, etc., which many buyers regard as more desirable than wines from other regions.

28.    Rightly or wrongly, consumers believe that these superior characteristics stem from performing every step of the winemaking process in the cool, coastal climate of the Oregon AVAs.

29.    No portion of any of the Oregon AVAs, including the Willamette Valley, Umpqua Valley, or Rogue Valley, is located in the State of California.

30.    Because Defendant vinifies, finishes, and bottles all of its wines in the State of California, these wines can never be marketed using the name of one or more of the Oregon AVAs, as these processes must be completed withing the State of Oregon in order to label the wines with an Oregon AVA.

31.    Defendant attempts to confuse buyers by stating that its grapes come from one or more of the Oregon AVAs.

32.    However, it is not simply where the grapes are grown, but rather, where the entire winemaking process is conducted that determines whether a winemaker may claim that a wine is produced in an Oregon AVA. Defendant's Product does not meet the requirements to make such a claim.

/ / /

/ / /

**II.    Defendant's Product labeling, packaging, and marketing materials are designed to lead reasonable consumers to believe the Product meets the criteria to be considered wine from the Oregon AVAs when, in fact, it does not.**

33.    Defendant's Product has labeling, packing, and marketing materials representing that the wine is produced in Oregon AVAs.

34.    The back label for the 2017 vintage Elouan pinot noir is pictured below.  The label clearly lists the three Oregon AVAs, despite the fact that the wine was made in California.



*Elouan Label*

35.    Additionally, the boxes in which bottles of the 2017 Elouan were shipped and sold contain the names of the Oregon AVAs.





*Elouan Packaging*

36.    The labeling and packaging materials are also replete with references to the Oregon Appellation.

37.    In 2018, the Federal government forced Defendant to change its Elouan labeling and packaging due to its misleading nature regarding the origins and product of the wine.

38.    However, upon information and belief, much of the 2017 Elouan is still available in the marketplace.

39.    Overall, the Product labeling is designed to create the impression and belief that these are premium wines produced in Oregon AVAs.

40.    Despite Defendant's affirmative representation that the Product is produced in the Oregon AVAs, and despite the Product packaging, which indicates to reasonable consumers that the wine is an authentic pinot noir from the Oregon AVAs, the Product is not produced in any Oregon AVA, and is, in fact, vinified and finished in California.

41.    The basic assumption implied through Defendant's use of the names of the Oregon AVAs is that the wine meets the criteria for the use of the names of these AVAs by the OWA.

42.    Wine producers are not permitted to unilaterally determine the standard for identifying specific Oregon AVAs on their labeling, packaging, marketing materials, etc.  The OWA has created these standards.

43.    Wines that are vinified and finished in California, or in any other state, can never meet the standards for labeling a wine as though it was produced in an Oregon AVA.

44.    Defendant is aware of the OWA standards for claiming that a wine is from an Oregon AVA.

45.    Defendant does not disclose that the bottles and packages marked with the names of the Oregon AVAs do not, in fact, contain authentic wines from any Oregon AVA.

46.    Defendant attempts to confuse consumers by suggesting that because a wine is made with grapes Defendant claims were grown in the Oregon Appellation, it is selling those consumers authentic wines produced in the Oregon AVAs.  This is patently false.

**III.    The impact of Defendant's advertising and labeling practices**

47.    Plaintiff and the Class members have been and will continue to be deceived or misled by Defendant's false and deceptive labeling and representations.

48.    Defendant's Product labeling, packaging, and marketing materials lead reasonable consumers to believe Defendant's Product originates from the Oregon AVAs: (i) the Product labeling references the Oregon Appellation; and (ii) the Product labeling, packaging, and marketing materials, contain references to specific Oregon AVAs.

49.    To the detriment of consumers, Defendant's Product labeling, packaging, and marketing is false and misleading as the Product is not, in fact, wine eligible for designation with any Oregon AVA.

50.    The false belief created by Defendant's Product labeling and packaging is a material factor in influencing consumer purchase decisions.

51.    Had Plaintiff and the Class members known the truth about the Product, they would not have purchased Elouan and would not have paid the prices they paid for the Product.

52.    Plaintiff and each Class member were harmed by purchasing Defendant's Product because they did not receive what they paid for, and, as a result, lost money and property.

**IV.    Plaintiff's Experiences**

**A.    Barry N. Kay**

53.    Plaintiff Barry N. Kay purchased several bottles of Elouan beginning in or around 2018.

54.    Plaintiff Barry N. Kay last purchased Elouan on or around June 2018 at Total Wine in Pasadena, California.

55.    Plaintiff Barry N. Kay relied upon the representations on the Elouan labeling when purchasing the wine, believing it to be authentic wine from one or more of the Oregon AVAs.

56.    Had the Product not displayed the names of the Oregon Appellation and the Oregon AVAs, Plaintiff Barry N. Kay either would not have purchased the wine or would not have been willing to pay a premium for the wine.  If Plaintiff Barry N. Kay could rely upon the truthfulness of Defendant's labeling, he would continue to purchase the Products in the future.

## FED. R. CIV. P. 9(b) ALLEGATIONS

57.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

58.    WHO: Copper Cane, LLC made material misrepresentations and/or omissions of fact in selling wines labeled as having been produced in Oregon AVAs.

59.    WHAT: Defendant made material misrepresentations and/or omissions of fact by specifically labeling, packaging, and marketing its wines as if they were produced in Oregon AVAs. Wines from these Oregon AVAs are considered by many customers to have superior characteristics to wines produced in other AVAs, and purchasers seek these wines out and pay a premium for them on that basis.  This is particularly true of pinot noir varieties from the Oregon AVAs.  The Defendant has falsely identified the Product at issue here as a pinot noir from the Oregon AVAs in order to avail itself of this enhanced perception and commensurate pricing premium for its wines.  In order to be considered an authentic wine from an Oregon AVA, at least 95% of the grapes used in making the wine must be from that particular Oregon AVA, and the wine must be fully vinified and finished within the state or Oregon. Defendant knew or should have known this information is material to the reasonable consumer and impacts the purchasing decision.  Defendant attempts to confuse consumers by representing that its wines are produced in Oregon AVAs and the Oregon Appellation, when it knows they are, in fact, produced in California.

60.    WHEN: Defendant made material misrepresentations and/or omissions detailed herein continuously throughout the Class Period.

61.    WHERE: Defendant's material misrepresentations and/or omissions were made on the labeling, packaging, and marketing materials for its Product.

62.    HOW: Defendant made written misrepresentations and/or failed to disclose material facts regarding the true quality and origin of the Product on the labeling, packaging, and marketing materials of the Product.

63.     WHY: Defendant engaged in the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay for the Product.  Defendant profited by selling the Product to thousands of consumers.

## CLASS DEFINITIONS AND ALLEGATIONS

64.     Plaintiff, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), brings this action on behalf of the following Classes:

(a)     California Class: All persons who purchased Defendant's Product within the state of California and within the applicable statute of limitations period.

(b)     Multi-State Class: All persons in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming who purchased Defendant's Product during the applicable statute of limitations period (collectively, the "Classes").

65.     Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Copper Cane, LLC Product for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom this case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

66.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class members is impracticable. Defendant has sold many thousands of units of the Product to Class members.

67.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether the representations discussed herein that Defendant made about the Product were or are true, misleading, or likely to deceive a reasonable consumer;

(b)    Whether the representations discussed herein were material to a reasonable consumer;

(c)    Whether Defendant's conduct violates public policy;

(d)    Whether Defendant engaged in false or misleading advertising;

(e)    Whether Defendant's conduct constitutes violations of the laws asserted herein;

(f)    Whether Plaintiffs and the other Class members have been injured and the proper measure of their losses as a result of those injuries; and

(g)    Whether Plaintiffs and the other Class members are entitled to injunctive, declaratory, or other equitable relief.

68.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the other Class members because, among other things, Plaintiff and all Class members were injured in a similar manner through the uniform conduct described herein.

69.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because Plaintiff's interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

70.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Classes as a whole.

71.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation

creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

## COUNT I

**Violation of the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of the California Class)**

72.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

73.    Plaintiff brings this claim individually and on behalf of the Class.

74.    Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

75.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

76.    In the course of conducting business, Defendant engaged in unlawful business practices by violating Cal. Civ. Code § 1770 and Cal. Bus. & Prof. Code § 17500, as explained more fully below. Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices.

77.    In the course of conducting business, Defendant also committed "unfair" and "fraudulent" business practices by, among other things, representing that its Product was produced in the Oregon AVAs, when, in fact, it was not.

78.    These representations, Defendant's corresponding omissions, and Defendant's other related actions and conduct were false, misleading, and likely to deceive the consuming public.

79.    Additionally, there were reasonably available alternatives to Defendant's conduct, and Defendant's false and deceptive advertising provided no societal benefit.  Plaintiff and the members of the Class paid large sums of money to Defendant to receive wines produced in the Oregon AVAs, but did not receive such products.

80.    Receiving money as a result of false and misleading advertising is contrary to public policy and is immoral, unethical, oppressive, unscrupulous and substantially injures consumers. And, as demonstrated by the many California laws prohibiting false and deceptive advertising, there is no justification or motive that outweighs the harm caused by Defendant's false and deceptive advertising.

81.    Defendant knew, or should have known, its material misrepresentations and omissions would be likely to deceive and harm the consuming public and result in consumers making payments to Defendant to obtain wines produced in the Oregon AVAs that, in fact, were not.

82.    Plaintiff and the Class lost money and suffered injury in fact by purchasing Defendant's Product, and Defendant was unjustly enriched by receiving payments from Plaintiff and the Class in return for providing Plaintiff and the Class products that were not as advertised.

83.    Unless restrained and enjoined, Defendant will continue to engage in the unlawful, unfair and fraudulent conduct described herein.

84.    Accordingly, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, seeks restitution from Defendant of all money from Plaintiff and the other members of the Class obtained as a result of Defendant's unfair competition, an injunction prohibiting Defendant from continuing and further engaging in its unlawful, unfair and fraudulent conduct, corrective advertising, and all other relief the Court deems appropriate.

## **COUNT II**

**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of the California Class)**

85.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

86.    The CLRA, Cal. Civ. Code §§ 1750, *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in California Civil Code § 1770.

87.    Plaintiff brings this claim individually and on behalf of the Class.

88.    Plaintiff is a "consumer," Defendant is a "person," and the Product constitutes "goods" within the meaning of the CLRA. Cal. Civ. Code § 1761(a), (c) and (d).

89.    Defendant's sale and advertisement of the Product constitute "transactions" within the meaning of the CLRA.  Cal. Civ. Code § 1761(e).

90.    Plaintiff has standing to pursue these claims because he has suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein.

91.    The CLRA declares as unlawful the following unfair methods of competition and unfair or deceptive acts or practices when undertaken by any person in a transaction intended to result, or which results in the sale of goods to any consumer:

(5)    Representing that goods . . . have . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

(7)    Representing that goods . . . are of a particular standard, quality or grade . . . if they are of another.

(9)    Advertising goods . . . with intent not to sell them as advertised.

(16)    Representing that [goods] have been supplied in accordance with a previous representation when [they have] not.

Cal. Civ. Code § 1770(a)(5), (7), (9) and (16).

92.    Defendant violated the CLRA by representing that its Product was produced in the Oregon AVAs, when in fact it was not.

93.    Defendant knew or should have known its content and place-of-origin representations were false and misleading.

94.    Defendant's violations of the CLRA proximately caused injury in fact to Plaintiff and the Class.

95.    Plaintiff and the Class members purchased Defendant's Product on the belief that the Product was produced in the Oregon AVAs.

96.    Defendant's Product, however, is not produced in the Oregon AVAs, but instead, is made in the State of California.

97.    Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on behalf of the other members of the Class, seeks a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

98.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class members seek injunctive and equitable relief for Defendant's violations of the CLRA.

99.    Filed concurrently herewith is the required declaration stating facts showing that venue in this Court is proper pursuant to Cal. Civ. Code § 1780(d).

100.    Pursuant to § 1782 of the Act, Plaintiff notified Defendant in writing by certified mail sent on May 29, 2020, of its violations of § 1770 described above and demanded that it correct the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.  Defendant failed to respond to Plaintiff's letter or agree to rectify the problems identified and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act.  Therefore, Plaintiff further seeks actual, punitive and statutory damages, as appropriate.

## COUNT III

**Violation of the California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the California Class)**

101.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

102.    Plaintiff brings this claim individually and on behalf of the Class.

103.    The FAL, in relevant part, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

104.    Defendant's material misrepresentations and omissions alleged herein violate Cal. Bus. & Prof. Code § 17500.

105.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

106.    Pursuant to California Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of falsely and misleadingly labeling the Product.

107.    The required intent is the intent to dispose of property, not the intent to mislead the public in the disposition of such property.

108.    Defendant violated the FAL by representing that its Product was produced in the Oregon AVAs, when in fact it was not.

109.    As a direct and proximate result of Defendant's untrue and misleading advertising, Plaintiff and the Class members have suffered injury in fact and have lost money.

110.    Accordingly, Plaintiff requests that the Court order Defendant to restore the money Defendant has received from Plaintiff and the members of the Class, and that the Court enjoin Defendant from continuing its unlawful practices.

## COUNT IV

### Unjust Enrichment
### (On Behalf of the California Class)

111.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

112.    At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the California Class.

113.    Plaintiff and members of the California Class conferred upon Defendant non-gratuitous payments for the Product that they would not have if not for Defendant's deceptive advertising and marketing.  Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the California Class, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the California Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

114.    Defendant has been unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiff and members of the California Class.  Defendant's retention of that benefit under these circumstances is unjust and inequitable because Defendant misrepresented, among other things, that its merchandise possessed characteristics that the Product did not, in fact, possess.  Defendant's

misrepresentations caused injuries to Plaintiff and members of the California Class because they paid a price premium due to the misleading advertising and markings on the Product's labels that they otherwise would not have paid.

115. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the California Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiff and members of the California Class for unjust enrichment, as ordered by the Court.

## COUNT V

### Breach of Express Warranty
### (On Behalf of the Multi-State Class)

116. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

117. Plaintiff and the Multi-State Class members formed a contract with Defendant at the time they purchased the Product. As part of that contract, Defendant represents that the Product is a wine produced in Oregon AVAs, as described above. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the Multi-State Class members, on the one hand, and Defendant, on the other.

118. Defendant made the above-described representations to induce Plaintiff and the Multi-State Class members to purchase the Product, and Plaintiff and the Multi-State Class members relied on the representations in purchasing the Product.

119. All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiff and the other Multi-State Class members.

120. Defendant breached the express warranties about the Product because, as alleged above, the Product is not "certified." Defendant breached the following state warranty laws:

A.   Alaska Stat. section 45.02.313;

B.   A.R.S. section 47-2313;

C.   A.C.A. section 4-2-313;

D.   Cal. Comm. Code section 2313;

E.   Colo. Rev. Stat. section 4-2-313;

F.    Conn. Gen. Stat. section 42a-2-313;

G.    6 Del. C. section 2-313;

H.    D.C. Code section 28:2-313;

I.    O.C.G.A. section 11-2-313;

J.    HRS section 490:2-313;

K.    Idaho Code section 28-2-313;

L.    810 ILCS 5/2-313;

M.    Ind. Code section 26-1-2-313;

N.    K.S.A. section 84-2-313;

O.    KRS section 355.2-313;

P.    11 M.R.S. section 2-313;

Q.    Mass. Gen. Laws Ann. ch. 106 section 2-313;

R.    Minn. Stat. section 336.2-313;

S.    Miss. Code Ann. section 75-2-313;

T.    R.S. Mo. Section 400.2-313;

U.    Mont. Code Anno. Section 30-2-313;

V.    Neb. Rev. Stat. section 2-313;

W.    Nev. Rev. Stat. Ann. section 104.2313;

X.    RSA 382-A:2-313;

Y.    N.J. Stat. Ann. section 12A:2-313;

Z.    N.M. Stat. Ann. section 55-2-313;

AA.    N.Y. U.C.C. Law section 2-313;

AB.    N.C. Gen. Stat. section 25-2-313;

AC.    N.D. Cent. Code section 41-02-30;

AD.    ORC Ann. section 1302.26;

AE.    12A Okl. St. section 2-313;

AF.    Or. Rev. Stat. section 72-3130;

AG.    13 Pa.C.S. section 2313;

1    AH.    R.I. Gen. Laws section 6A-2-313;

2    AI.    S.C. Code Ann. section 36-2-313;

3    AJ.    S.D. Codified Laws, section 57A-2-313;

4    AK.    Tenn. Code Ann. section 47-2-313;

5    AL.    Tex. Bus. & Com. Code section 2.313;

6    AM.    Utah Code Ann. section 70A-2-313;

7    AN.    9A V.S.A. section 2-313;

8    AO.    Va. Code Ann. section 59.1-504.2;

9    AP.    Wash. Rev. Code Ann. section 62A.2-313;

10    AQ.    W. Va. Code section 46-2-313;

11    AR.    Wyo. Stat. section 34.1-2-313.

121.    As a result of Defendant's breaches of express warranty, Plaintiff and the other members of the Multi-State Class were damaged in the amount of the premium price they paid for the Product, in amounts to be proven at trial.

122.    On May 29, 2020, Plaintiff, on behalf of himself and the other members of the Multi-State Class, sent a notice letter to Defendant which provided notice of Defendant's breach and demanded that it correct, repair, replace, or otherwise rectify the breach complained of herein.  The letter also stated that if Defendant refused to do so, a complaint would be filed seeking damages. Defendant failed to comply with the letter.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the proposed Classes, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.    Certifying the Classes as requested herein, designating Plaintiff as class representative and appointing the undersigned counsel as class counsel;

B.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.    Ordering restitution and disgorgement of all profits and unjust enrichment Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair and fraudulent business practices;

D.    Awarding Plaintiff and the proposed Class members damages;

E.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

F.    Awarding statutory and punitive damages, as appropriate;

G.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

H.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

I.    Ordering such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: June 18, 2020                    **CARLSON LYNCH LLP**

By:    */s/Todd D. Carpenter*
Todd D. Carpenter (CA Bar No. 234464)
tcarpenter@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Telephone: 619-762-1900
Facsimile:  619-756-6991

**CARLSON LYNCH LLP**
Edwin J. Kilpela (*Pro Hac Vice* Forthcoming)
ekilpela@carlsonlynch.com
James P. McGraw (*Pro Hac Vice* Forthcoming)
jmcgraw@carlsonlynch.com
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone  412-322-9243
Facsimile   412-231-0246

**MURRAY LAW FIRM**
Stephen B. Murray (*Pro Hac Vice* Forthcoming)
smurray@murray-lawfirm.com
Stephen B. Murray, Jr. (*Pro Hac Vice* Forthcoming)
smurrayjr@murray-lawfirm.com
Caroline T. White (*Pro Hac Vice* Forthcoming)
cthomas@murray-lawfirm.com
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone      (504) 525-8100
Facsimile:      (504) 584-5249

*Attorneys for Plaintiff*

COMPLAINT