UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY N. KAY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COPPER CANE, LLC,<br><br>Defendant. | Case No. 20-cv-04068-RS<br><br>**ORDER DENYING IN PART AND GRANTING IN PART WITH LEAVE TO AMEND MOTION TO DISMISS** |

**I. INTRODUCTION**

Plaintiffs Barry N. Kay and Bryan J. Dodge Jr. bring this putative class action challenging as misleading the labels affixed to a line of Defendant Copper Cane, LLC's ("Copper Cane") pinot noirs. Specifically, they claim to have been deceived by references to the wine's appellation of origin in Oregon generally and three valleys in Oregon specifically, as well as the grapes' purported coastal roots. Copper Cane now moves to dismiss the operative complaint. For the reasons set forth below, the motion is denied in part and granted in part with leave to amend.

**II. BACKGROUND**

**A. Statutory Background**

The Federal Alcohol Administration Act requires that alcoholic beverage labels comply with regulations, issued by the Secretary of the Treasury, which must "prohibit deception of the consumer" and ensure the consumer is equipped "with adequate information as to the identity and quality of the products." 27 U.S.C. §§ 205(e). The Secretary has delegated responsibility to the Alcohol and Tobacco Tax and Trade Bureau ("TTB") which has, in turn, issued regulations

prohibiting labeling likely to mislead a consumer. *See, e.g.,* 27 C.F.R. § 4.64(a)(1) (prohibiting in the advertisement of wine "[a]ny statement that is false or untrue in any material particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression"); *id.* § 4.64(g) ("No statement, design, device, or representation which tends to create the impression that the wine originated in a particular place or region, shall appear in any advertisement unless the label of the advertised product bears an appellation of origin, and such appellation of origin appears in the advertisement in direct conjunction with the class and type designation.").

Additionally, the TTB must approve all labels prior to use. 27 C.F.R. § 4.50(a) ("No person shall bottle or pack wine, other than wine bottled or packed in U.S. Customs custody, or remove such wine from the plant where bottled or packed, unless an approved certificate of label approval, TTB Form 5100.31, is issued by the appropriate TTB officer."). To obtain a certificate of label approval ("COLA"), a beverage distributor must submit the appropriate form, which is then reviewed by a TTB officer and stamped if it "complies with applicable laws and regulations." 27 C.F.R. § 13.21. The application form requires a representation by the distributor that "all statements appearing on the application are true and correct" and that "the representations on the labels attached to this form . . . truly and correctly represent the content of the containers to which these labels will be applied." TTB Application for Certification/Exemption of Label/Bottle Approval, Form 5100.31.

The TTB also has the authority to create appellations of origin for wine grapes and American viticultural areas ("AVAs").[1] 27 C.F.R. § 9.0. An appellation is a unit of origin, such as a country, a single state, a grouping of up to three states, a county, a grouping of up to three counties, or an AVA. *Id.* § 4.25(a). To merit a state appellation, (i) at least 75 percent of the wine must be derived from fruit grown in the appellation area, (ii) the wine must be fully finished in the state or an adjacent state, and (iii) the wine must conform to other regulations specific to the

---

[1] An AVA is a recognized wine grape-growing region in the United States.

appellation area. *Id.* § 4.25(b)(1). To qualify for an AVA designation, (i) the AVA must be recognized by the TTB, (ii) at least 85 percent of the grapes must be grown in the AVA, and (iii) the wine must be fully finished within a state in which the AVA is located. *Id.* § 4.25(e)(3). Relevant here, the TTB recognizes Oregon as an appellation of origin, *id.* § 4.25(a), and the Willamette Valley, Umpqua Valley, and Rogue Valley as separate AVAs. *Id.* § 9.90, 9.89, 9.132.

### B. Factual Background[2]

The wine allegedly mislabeled here is a pinot noir called "Elouan." It is distributed by Copper Cane and, as relevant for present purposes, comes in a 2016 and 2017 vintage. Each year sports a different label, though both describe the wine as an "Oregon Pinot Noir." The 2016 label references the "coastal hills" of Oregon as an "ideal region to grow" this type of wine. First Amended Complaint ("FAC") ¶ 37. The 2017 label also references the "coast" and includes a map of Oregon with leaves denoting the locations of the Willamette, Umpqua, and Rogue Valleys. FAC ¶ 39. It contains the phrase "Purely Oregon, Always Coastal." *Id*. Additionally, marketing materials related to the 2016 Elouan designate the same three valleys as "Regions of Origin," and describes them as "premiere growing regions along Oregon's coast." FAC ¶ 38. The boxes in which both vintages were shipped refer to the "Oregon Coast" and the three valleys. Both back labels contain, however, two lines of text referencing California. On both labels, the first line provides: "VINTED & BOTTLED BY ELOUAN." FAC ¶ 37, 39. Below, the 2016 provides: "NAPA, CA • CONTAINS SULFITES."; the 2017 reads "ACAMPO, CA • CONTAINS SULFITES." *Id.*

In 2018, the federal government forced Copper Cane to alter the Elouan labels after a determination that they were misleading, though many bottles bearing the original labels are still available in the marketplace. Plaintiffs do not describe what changes were made or include pictures of the new labels. Copper Cane, however, attaches to its motion to dismiss the TTB

---

[2] The factual background is based on the allegations in the complaint, which must be taken as true for purposes of this motion, as well as documents which may be incorporated by reference or of which judicial notice may be taken. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

permits for the 2016 label, as well as the original and updated 2017 label. The new label omits any overt reference to any of the Oregon AVA valleys and replaces the phrase "Purely Oregon, Always Coastal." with the phase "Purely Elouan, Always Coastal." Armstrong Declaration Ex. 3. It also clarifies that the wine is "[m]ade in California in the signature Copper Cane style[.]" *Id.*

Plaintiff Kay purchased several bottles of 2016 Elouan in 2018, most recently from Total Wine in Pasadena, California. Dodge purchased one bottle of the 2017 Elouan in his home state of Louisiana in 2018. Asserting large consumer demand for wines from the Oregon AVAs, they contend consumers are willing to pay a premium for wines from these regions. While both Kay and Dodge indicate they would not have purchased the Elouan (nor paid a premium for it) had the labeling not misled them, they claim they will continue to buy it if they can "rely upon the truthfulness of Defendant's labeling." FAC ¶ 61, 64.

Plaintiffs accuse Copper Cane of falsely fostering the belief first that Elouan is a genuine Oregon wine associated with the three AVAs referenced above, and second that the grapes are grown on "coastal" vineyards. They contend the labels violate California's Unfair Competition Law ("UCL"), California's Consumer Legal Remedies Act ("CLRA"), and California's False Advertising Law ("FAL"). They also assert Copper Cane has been unjustly enriched and breached an express warranty. They seek ultimately to represent themselves and a similarly situated class of oenophiles.

### III. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Thus, dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient

ORDER
CASE NO. 20-cv-04068-RS
4

facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION[3]

### A. UCL, CLRA, and FAL Claims (Counts One, Two, and Three)[4]

#### 1. *Standing*

Copper Cane argues Plaintiffs lack "standing" to pursue a UCL violation based on any packaging or marketing materials and the 2017 label. It contends violations premised on misrepresentations on the packaging or marketing materials must be dismissed because neither Kay nor Dodge claims to have relied on anything other than the wine labels. Claims related to the 2017 Elouan must be dismissed, it argues, because Dodge is not a California resident nor did he purchase the wine in California. Plaintiffs conceded at the hearing that their claims rise and fall on the labels and that they do not seek to assert claims based on any other external materials.

The thornier question, however, is whether Dodge, a Louisianan and the only plaintiff alleged to have purchased the 2017 Elouan, has standing to bring a claim under the UCL. California consumer protection statutes "presumptively do not apply to occurrences outside California." *Wilson v. Frito-Lay N. Am. Inc.*, 961 F.Supp.2d 1134, 1147 (internal quotation marks and citation omitted) (citing *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011)). Occasionally, however, such application is warranted. *Ehret v. Uber Techs., Inc.*, 68 F.Supp.3d

---

[3] Defendant's unopposed request to take judicial notice of Elouan's labels and the three COLAs attached to Copper Cane's motion to dismiss is granted.

[4] Because the parties substantially recycle their UCL arguments into their FAL and CLRA discussions, and Copper Cane's arguments as to all three claims fail because Plaintiffs have identified an actionable misrepresentation, the claims are considered together.

ORDER
CASE NO. 20-cv-04068-RS

5

1121, 1130 (N.D. Cal. 2014) (noting courts including the California Supreme Court have permitted the application of California law in cases where alleged misrepresentations were "disseminated from California"). To determine whether California law should apply, "courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which advertising and other promotional literature decisions were made." *In re Toyota Motor Corp.*, 785 F.Supp.2d 883, 917 (C.D. Cal. 2011).

Dodge is a Louisiana citizen who purchased one bottle of the 2017 Elouan in New Orleans, Louisiana. A conclusion he has standing to assert a UCL claim would therefore seem to stretch to a breaking point the presumption against extraterritorial application. *See Wilson*, 961 F.Supp.2d at 1147 ("[N]on-California residents' [UCL, FAL, and CLRA] claims are not supported where none of the alleged misconduct or injuries occurred in California."). Though Copper Cane is based in California and it is possible that marketing decisions may flow from its headquarters, Plaintiffs do not allege Copper Cane handles its own marketing or that Dodge's purchase was otherwise "directed from California or had anything to do with California." *Id.* The clarification in Plaintiffs' opposition to the motion that "Defendant's principal offices are in California, where it made its misleading advertising and labeling decisions" is an improper attempt to amend their complaint and cannot make up for what was not alleged in the FAC. Opposition ("Opp.") at 8. Thus, an inference, however reasonable, about the locus of corporate power does not overcome the heavy presumption against extraterritorial application and establish a "sufficient nexus between California and the misrepresentations." *Ehret*, 68 F.Supp.3d at 1132. The UCL claim based on Dodge's purchase of the 2017 Elouan is thus dismissed with leave to amend.[5]

### 2. Safe Harbor

Copper Cane argues California's safe harbor doctrine precludes Plaintiffs' UCL, CLRA,

---

[5] The same analysis applies to Plaintiffs' CLRA and FAL claims. Accordingly, those claims are also dismissed with leave to amend to the extent they rely on Dodge's purchase.

and FAL claims because the labels at issue were previously approved by the TTB. "Safe harbor" is a common law doctrine insulating defendants from civil liability when the "[l]egislature has permitted [the challenged] conduct or considered a situation and concluded no action should lie." *Cel-Tech Comms., Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 182 (1999). Though federal regulations "adopted in accordance with statutory authorization form the basis of federal law," *Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066, 1074 (E.D. Cal. 2010) (citations omitted), courts disagree about whether a COLA issued by the TTB carries the force of federal law to create a safe harbor.

On one hand, some courts have reasoned that because alcoholic beverage distributors must obtain a COLA and the TTB has exclusive jurisdiction to regulate labels on alcoholic beverages, approved labels must be permitted under federal law. *See, e.g., Cruz v. Anheuser-Busch, LLC*, 2015 WL 3561536, at *6 (C.D. Cal. June 3, 2015), *aff'd on other grounds*, 682 Fed.Appx. 583 (9th Cir. 2020). In coming to that conclusion, the *Cruz* court specifically held that the COLAs were a formal rulemaking procedure. *Id.* at *5. It explained that under *United States v. Mead*, "[it] is fair to assume that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force." 533 U.S. 218, 230 (2001). When the Secretary of the Treasury specifically delegated rulemaking authority to the TTB which, in turn, promulgated regulations applicable to the labeling of alcoholic beverages, "[t]his delegation render[ed] TTB's regulations with the exclusive effect of federal law." *Id.* at *6. Pursuant to this line of reasoning, the issuance of a COLA provides a safe harbor. As stated above, a number of courts around the country agree with this conclusion. *See, e.g., O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F.Supp.3d 441, 465 (D. Mass. 2018) ("[T]he COLA has the force of law required to give defendants' conduct safe harbor[.]"); *Pye v. Fifth Generation, Inc.*, 2015 WL 5634600, at *4 (N.D. Fla. Sept. 23, 2015).

On the other hand, courts which have closely analyzed *Mead* have concluded COLAs are too "informal" to be considered regulations having the force of law. *Hofmann v. Fifth Generation,*

*Inc.*, 2015 WL 5440330, at *7 (S.D. Cal. March 18, 2015); *Nowrouzi v. Maker's Mark Distillery, Inc.*, 2015 WL 4523551, at *5 (S.D. Cal. July 27, 2015) (endorsing the reasoning in *Hofmann*). Compared to the "rigorous" approval process for prescription-drug labels, the TTB process "hinges on self reporting" and reflects only the representations made to it by the distributor, not an endorsement of those claims. *Hofmann*, 2015 WL 5440330, at *7*; see also Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *8 (N.D.N.Y. Jan. 12, 2016) ("The COLAs filled out by [the distributor] and certified by [the distributor] to be true and correct are *simply marked approved* by the TTB.") (emphasis added)). In *Mead* itself the agency decision at issue was not entitled to *Chevron* deference, and therefore did not have the force of law, for a laundry list of reasons revolving around the informality of the process afforded: (i) the agency did not engage in notice-and-comment rulemaking prior to issuing decisions, (ii) the rulings were not binding on third parties, (iii) the rulings were "conclusive" only between the agency and the defendant, and (iv) the rulings were issued in such large quantities, 10,000 to 15,000 per year, that they could not possibly have each enjoyed the attention and procedure characteristic of formal rulemaking. *Mead*, 533 U.S. at 233–234. In summary: *Mead* rejected the proposition that an administrative action based on statutory and regulatory authority *per se* has the force of law. *Shalikar v. Asahi Beer U.S.A., Inc.*, 2017 WL 9362139, at *6 (C.D. Cal. Oct. 16, 2017).

      Copper Cane urges reliance on *Cruz* and attempts to cast the cases that came out differently as particularly focused on the absence of an individualized showing that the TTB actually reviewed the statements on the challenged labels. Neither argument is persuasive. *Cruz* is not persuasive for the reason articulated in *Shalikar*: *Mead* specifically disavowed the idea that by simply delegating its authority to an agency, Congress was necessarily empowering that agency to act with the force of law. *See id.; see also Reid v. Johnson & Johnson*, 780 F.3d 952, 964 (9th Cir. 2015) ("Creation of federal law should demand at least the same formality for purposes of preemption as it does for purposes of *Chevron* deference."). Similarly to the agency in *Mead*, the TTB does not engage in notice-and-comment rulemaking before processing COLAs and it is reasonable to assume the TTB issues many COLAs each year. Copper Cane offers no evidence to

combat that assumption or to suggest that the COLAs bind parties other than the government and the beverage distributor. In sum, Copper Cane has not proven that the process of obtaining a COLA "fosters[s] the fairness and deliberation" characteristic of procedures entitled to the force of law. *See Mead*, 533 U.S. at 230. The apparent informality of the TTB procedures indicate the COLAs likely cannot provide safe harbor.

Copper Cane also errs in its assertion that courts refused to dismiss complaints *because* they were unable to show the TTB actually reviewed the challenged labels. Rather, the distributors could not demonstrate that claims in the labels had been scrupulously reviewed because facts to that effect would not be properly before a court at the motion to dismiss stage. Even if it were correct, however, Copper Cane offers no evidence that the TTB specifically reviewed for falsity its particular labels. Its allegation that the TTB reviewed its labels three times and therefore must have determined they were not misleading is unpersuasive.[6] The quantity of reviews does not guarantee the quality of review. More than once it avers that the words and phrases related to the word "coast" were "expressly reviewed" or "specifically authorized," by the TTB but then cites only to the COLAs generally. Motion ("Mot.") at 16. As in cases where other courts have not accepted this argument, the record here "does not reflect whether the TTB investigated or ruled upon the representations" made by the beverage distributor. *Singleton*, 2016 WL 406295, at *8; *Welk v. Beam Suntory Import Co.*, 124 F.Supp.3d 1039, 1042 (S.D. Cal. 2015 ("[T]he scope of the TTB's review isn't properly before the Court at [the motion to dismiss] stage[.]"). It cannot be determined this juncture that the TTB's approval of the labels entitles Copper Cane to safe harbor from Plaintiffs' UCL, CLRA, and FAL claims.

### *3. Misrepresentation*

Claims premised on a misleading label must meet the reasonable consumer standard, meaning that Plaintiffs must show "members of the public are likely to be deceived." *Williams v.*

---

[6] Even if, as Copper Cane suggested at the hearing, the survival of the word "coastal" on the 2017 label after numerous federal government reviews indicates the claim was scrutinized and approved, this type of argument is inappropriate for the motion to dismiss stage.

1   *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The reasonable consumer standard also
2   requires "a probability that a significant portion of the general consuming public or of targeted
3   consumers, acting reasonably in the circumstances, could be misled." *Becerra v. Dr Pepper/Seven
4   Up, Inc.*, 945 F.3d 1225, 1228–1229 (internal quotation marks and citation omitted). However, the
5   reasonable consumer test is not satisfied where the challenged packaging "includes disclosures
6   that makes the meaning of the representation clear." *Dinan v. SanDisk LLC*, 2020 WL 364277, at
7   *7 (N.D. Cal. Jan. 22, 2020). Still, courts recognize the reasonable consumer standard "raises
8   questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations."
9   *Reid*, 780 F.3d at 958 (internal alterations and quotation marks omitted).

First, Copper Cane argues Plaintiffs cannot state a claim for misrepresentation by omission because the labels expressly state Elouan is bottled in California. Specifically, it contends any allegation that it failed to disclose the "true quality and origin" of the wines must fail because the labels disclose that the wines were finished in California. FAC ¶ 70. A nondisclosure claim must be pled with particularity and both identify the content allegedly omitted and describe where that information should have been revealed. *Bird v. First Alert, Inc.*, 2014 WL 7248734, at *6 (N.D. Cal. Dec. 19, 2014). The claim may be defeated if the necessary disclosures are included on the packaging. *Id.* at *7.

It is clear from the face of the FAC that Plaintiffs seek more specific, "accurate" information about Elouan's origin. It would be unreasonable, at the pleading stage, to expect Plaintiffs to articulate exactly the facts about Copper Cane's manufacturing process that would have cleared up their misunderstanding. Furthermore, whether the reference to California on the back-left corner of the label would clarify a consumer's misunderstanding is too close a call to decide at this stage. Though the referenced two lines of text read: "VINTED & BOTTLED" above and "NAPA, CA • CONTAINS SULFITES" immediately below, the word "in" notably does not appear on the label to connect the vinification and bottling process to California. Whether the graphic design of the two lines of text are sufficiently clear such that no reasonable consumer would be deceived is thus a question of fact not properly resolved at this juncture.

Second, Copper Cane contends Plaintiffs have failed to identify any actionable affirmative misrepresentations. "[T]o be actionable as an affirmative misrepresentation, a statement must make a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Welk*, 124 F. Supp. 3d at 1043 (alteration in original). According to Copper Cane, Plaintiffs' objections to the labels' claims about the wine's production in the Oregon AVAs and its coastal origins are unspecific and, more importantly, not misleading.[7]

In support of its argument, Copper Cane relies on *Maeda v. Kennedy Endeavors, Inc.*, 407 F.Supp.3d 953 (D. Haw. 2019), in which a group of consumers alleged the use of the word "Hawaiian" and stereotypically Hawaiian imagery on a bag of potato chips led them erroneously to believe the chips were manufactured in Hawai'i. To conclude the representations could not form the basis of a misrepresentation claim, the court reasoned that though "Hawaiian" is a geographic term capable of leading consumers to believe a product was produced in Hawai'i, it was not on its own likely to evoke confusion. *Id.* at 972. The court compared its facts to cases in which a reasonable consumer could certainly have been be misled. *See, e.g., Broomfield v. Craft Brew Alliance*, 2017 WL 3838453, at *1–2 (N.D. Cal. Sept. 1, 2017) (concluding it was misleading for a beer brewed outside Hawai'i to include on its packaging a map of Hawai'i marking the location of the brewing company, a statement inviting the consumer to visit the brewery in Hawai'i, and a Hawaiian address); *Marty v. Anheuser-Busch Cos., LLC*, 43 F.Supp.3d 1333, 1340–42 (S.D. Fla. 2014) (finding the statements "Originated in Germany," "German Quality," and "Brewed under the German Purity Law of 1516" together could mislead a consumer into believing the beer was brewed in Germany). Comparatively, the use of the word "Hawaiian" in *Maeda* without any "specific geographic indicia related to Hawaii," was not misleading. *Id.* Copper Cane extrapolates this finding to assert that "the geographic reference must be tied to an actual assertion about the origin of the product to be actionable." Mot. at 21.

---

[7] As a result of the conclusion that Dodge lacks standing, arguments related to claims based on the 2017 Elouan, and more specifically the AVAs, will not be discussed.

1     Copper Cane argues that references to Oregon or its coast for the proposition that the wines
2 are produced solely in Oregon are not actionable because they are unspecific – they do not, for
3 example, invite a consumer to visit Copper Cane in Oregon or imply the winery is located there.
4 This argument ignores the widely understood fact that the location where a wine is produced has
5 special significance. *See Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 330 (2011) (noting, as
6 an example, that "to serious oenophiles, the difference between one year and the next, between
7 grapes from one valley and another nearby, might be sufficient to carry with it real economic
8 differences in how much they would pay"). Using Copper Cane's own standard, then, a
9 geographic reference on a wine label *is* understood to be an assertion about the origin of the
10 product. As Plaintiffs contend in the FAC, consumers are often willing to pay a premium for
11 wines from specific regions. Labels invoking the rarity or quality of grapes from particular regions
12 therefore need not invite a consumer to visit to be misleading. Whether the language identifying
13 Napa, California on the back of the label would belie a reasonable consumer's notion about the
14 wine's origin is, as noted above, a question of fact not appropriate for resolution at this stage.
15 General references to "Oregon" or "Oregon's coast" could thus potentially mislead a reasonable
16 consumer.

**B. Unjust Enrichment and Breach of Warranty (Counts Four and Five)**

To assert an unjust enrichment claim under California law, a plaintiff must allege that it conferred an unjust benefit on the defendant through mistake, fraud, coercion, or request. *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1057 (N.D. Cal. 2018). To maintain a claim for breach of express warranty, a plaintiff must allege: (1) the seller's statements constitute an affirmation of fact or promise, or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *In re Sony PS3 Other OS Litig.*, 2011 WL 672637, at *2 (N.D. Cal. Feb. 17, 2011). As part of the first element, the plaintiff must set forth "the exact terms of the warranty" allegedly breached. *Williams v. Beechnut Nutrition Corp.*, 185 Cal.App.3d 135, 141–42 (Cal. App. 2d 1986).

Copper Cane contends these claims also must fail because, as it argued as to the UCL,

1  CLRA, and FAL claims, Plaintiffs have failed to identify an actionable misrepresentation as a
2  matter of law. As discussed above, however, the myriad general references to Oregon and its
3  coasts could lead a consumer to believe the wine originated in Oregon. It is unclear at this stage
4  whether the language placing the words "Vinted & Bottled" near the words "Napa, CA"
5  necessarily precludes any misunderstanding that the wine had purely Oregonian origins. Without
6  more, these claims may not be dismissed.

### C. Injunctive Relief

A plaintiff seeking prospective injunctive relief in federal court must demonstrate both that "he has suffered or is threatened with a concrete and particularized legal harm," and that there is "a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985–86 (9th Cir. 2007) (internal quotation omitted). Past harm, coupled with "continuing, present adverse effects," can confer standing. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Copper Cane complains Plaintiffs have not sufficiently alleged the potential for future injury. Specifically, it characterizes as inconsistent Plaintiffs' contentions that they would not have purchased the wine had they known the truth of its origin (California), but that they would continue to purchase it if the labels accurately disclosed the wine's origin (also California).

For the proposition that consumers lack standing when they acquire knowledge that allows them to interpret the label at issue correctly, Copper Cane invokes this Court's decision in *Yothers v. JFC Intl., Inc.*, 2020 WL 5015262, at *5 (N.D. Cal. May 14, 2020). In *Yothers*, plaintiffs brought suit alleging a package of "wasabi" peas was mislabeled because the "wasabi" product contained horseradish rather than genuine wasabi. *Id.* at *1. Over the course of the litigation, plaintiffs learned that 95–99% of wasabi products in North America do not actually contain wasabi. *Id.* at *5. They were thus unable to prove future harm because, unlike in another case in which plaintiffs challenged the term "flushable," the *Yothers* plaintiffs could "simply read the packaging, before purchasing, and make an informed decision" rather than testing the product to determine if it truly lived up to the label "flushable." *Id.*

*Yothers* is not entirely instructive in this instance because Plaintiffs have not acquired any new knowledge that would help them decipher the challenged labels. Discovering via litigation the true nature of an allegedly mislabeled product is not analogous to gaining external information that contextualizes the label in a way that avoids deception. Furthermore, while Plaintiffs allege that Elouan is not truly Oregonian, they also allege the labels are generally misleading and would not sufficiently advise a consumer about the origin of the wine. They aver that they intend to buy Eloun in the future if they can "rely upon the truthfulness of Defendant's labeling." FAC ¶ 61, 64. Nowhere do Plaintiffs assert they are opposed to purchasing wine grown in Oregon but finished in California. Copper Cane's formulation of Plaintiffs' contentions is thus off the mark. Plaintiffs seek a truthful label, not necessarily a genuine Oregon wine. Because they have pled their intention to buy the wines in the future, and allegations in the FAC must at this stage be accepted as true, Plaintiffs have preliminarily established standing to seek injunctive relief.

## V. CONCLUSION

For the reasons set forth above, the motion is denied in part and granted in part with leave to amend.

**IT IS SO ORDERED**.

Dated: July 14, 2021

_____

RICHARD SEEBORG
Chief United States District Judge